IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Criminal Action No. 06-50-06-GMS |
| : | |
| ASHLEY HARRISON, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OMNIBUS RESPONSE
TO DEFENDANT HARRISON'S PRETRIAL MOTIONS**

NOW COMES the United States of America, by and through Colm F. Connolly, United States Attorney for the District of Delaware, and Douglas E. McCann, Assistant United States Attorney for the District of Delaware, and submits the following response to Defendant Ashley Harrison's Motion to Quash Indictment (D.I. 57), Motion Under Rule 16(d) (D.I. 59), Motion to Suppress Statements (D.I. 60), Motion to Compel the Government to Give Notice of its Intention to Use Evidence of Other Crimes, Wrongs or Acts (D.I. 61), Motion for Severance and for Separate Trial (D.I. 62) and Supplemental Motion Under Rule 16(d) (D.I. 77).

**Background of the Case**

On May 2, 2006, a federal grand jury returned an indictment against Defendant Harrison and six others. Defendant Harrison was charged with conspiracy to distribute more than fifty grams of cocaine base, and for aiding and abetting a conspiracy to distribute more than fifty grams of cocaine base. Six of the charged defendants are now in custody. Three (Mark Tatman, Craig Durham and Brittney Robinson) have either entered guilty pleas, or are expected to do so. Two (Willie Brown and Defendant Harrison) appear to be headed for trial. Marty Eaton is only recently in custody, and the government does not yet know what course he will take. No trial

date is presently set. The Court has set a scheduling conference for December 1, 2006.

The indictment alleges a conspiracy by Willie Brown and six others to distribute crack cocaine in the Dover, Delaware area. At trial, the government would offer proof that Brown conducted some of his operations out of 461 River Road in Dover. The government would also offer proof that Defendant Harrison lived there and that she calls herself "Nikki." Some of that proof is outlined below:

During the investigation, a DEA undercover agent (the "UC") played the role of a Maryland drug dealer looking to use Brown's organization as his source of supply. On January 12, 2006, the UC was directed by Brown to go to "Nikki's" house to discuss business. The UC proceeded to 461 River Road. On arrival, the UC observed Brown sitting on the front steps of 461 River Road. The UC and Brown then discussed various aspects of the drug business, including the future purchase of a half kilogram of crack by the UC from Brown.

On February 22, 2006, the government received authority to begin intercepting Brown's telephone calls. On February 24, 2006, the government intercepted a call between Harrison and Brown where Brown told Harrison, among other things, that because he paid her money, he ran the house and could say who was allowed to come and who was allowed to go at the house. Thereafter, DEA intercepted a number of calls where Brown directed his drug customers to 461 River Road. On at least one occasion, a customer was directed to "call Nikki." On some occasions, customers were told to knock on the door of 461 River Road. DEA also conducted surveillance on 461 River Road during the first week of March, 2006, and observed drug activity on five days in front of the residence, while also intercepting conversations where Brown directed customers to 461 River Road. Additionally, on March 9, 2006, the UC traveled to 461

2

River Road to purchase drugs. Defendant Marty Eaton came out of 461 River Road, and offered the UC powder cocaine. The UC refused the drugs, saying he was only interested in crack. Eaton then returned inside 461 River Road with the cocaine.

On March 16, 2006, Harrison called Brown to say, among other things, that she had been told that people were watching Harrison's house because of drug activity at the residence. Brown said "alright" and told her he was coming over.

## I.    Motion to Quash Indictment (D.I. 57)

Defendant Harrison moves to quash the indictment, because the indictment purportedly alleges only legal conclusions, and not specific facts, and because the indictment purportedly alleges a violation of 21 U.S.C. § 856, and not a conspiracy to violate 21 U.S.C. § 841.

An indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *United States v. Johnstone*, 856 F.2d 539, 540-42 (3d Cir. 1988) (*citing Hamling v. United States*, 418 U.S. 87 (1974)). In *Johnstone*, the indictment alleged that

> [f]rom in or about January of 1985, and continuing thereafter to on or about December of 1986, in the Eastern District of Pennsylvania, defendants GEORGE WETTON KENNETH SCHWARTZ, a/k/a "Kenny" PAUL HERIEGEL JAMES KIRBY, a/k/a "Steve" NANCY KELLY DARLENE WETTON and DONALD JOHNSTONE did knowingly and intentionally conspire, combine and agree together and with each other, and with other persons known and unknown to the grand jury, to distribute methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)....

*Id.* at 540. The indictment went on to allege details about specific conspiratorial roles of five of Johnstone's co-defendant's, but was silent as to Johnstone's role. *Id.*

Johnstone argued on appeal that the indictment was unconstitutionally vague because it did not allege any facts particular to him other than membership in the conspiracy. *Id.*[1] The Third Circuit concluded that the indictment was sufficient, because it alleged that Johnstone knowingly conspired with his co-defendant to distribute a controlled substance, which stated the elements of an offense under section 846. *Id.* at 541-42. In addition, the Third Circuit found that the indictment specified a time frame and geographic location, the purpose of the conspiracy, and described the role of several of Johnstone's co-defendants. *Id.* These allegations, the Third Circuit concluded, provided him with sufficient information to inform him of the conspiracy charged and to enable him to plead double jeopardy. *Id.* at 542. The Third Circuit found it irrelevant that the indictment did not describe his role, because section 846 conspiracies do not require proof of an overt act. *Id.*

In reaching its conclusion, the Third Circuit noted that Johnstone's argument misperceived the respective roles of grand and petit juries. *Id.* at 540. A grand jury is a safeguard against unfounded accusations. *Id.* A petit jury (or the Court in a bench trial) in contrast, is charged with determining whether each element of the crime is proved beyond a reasonable doubt. "Obviously, the burden of proof at trial may require the presentation of evidence additional to that presented before the grand jury." *Id.* at 540-41.[2]

---

[1] Johnstone also contended that the trial proof varied from the indicted conspiracy. *Id.* at 540-41.

[2] In addition, to the extent Defendant Harrison contends that the Court should dismiss the Indictment against her because the government cannot in her view meet its burden at trial, the Court should deny the motion. The Third Circuit has clearly stated that an indictment cannot be dismissed pre-trial on a sufficiency of the evidence basis. *See United States v. DeLaurentis*, 230 F.3d 659, 660-61 (3rd Cir. 2000).

4

The Indictment in this case (D.I. 6, 7) satisfies the *Johnstone* standard. It alleges that Defendant Harrison knowingly conspired with others to distribute a controlled substance. It alleges that time frame when the conspiracy was active, and it alleges the geographic location of the conspiracy. It also describes Harrison's role in the conspiracy – "ASHLEY N. HARRISON a/k/a "Nikki" made her Dover residence available to BROWN for use as a location where some sales to BROWN's customers were made." Notably, the description of her role is a step beyond the notice that Johnstone received – and thus provides her with more notice than is necessary.

The case cited by Defendant Harrison, *Russell v. United States*, 369 U.S. 749 (1962) is inapposite. In *Russell*, the petitioners were charged with violating 2 U.S.C. § 192, which in 1962 made it a misdemeanor to refuse to answer a question under inquiry by Congress. The statute provided:

> Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, **refuses to answer any question pertinent to the question under inquiry**, shall be deemed guilty of a misdemeanor . . . .

*Id.* at 752, n.2 (emphasis added). The case involved substantive offenses, and not a conspiracy. The indictments at issue alleged that the defendants refused to answer questions "pertinent to the question under inquiry" before Congress (which is an element of the offense set forth in the statute), but did not allege what the question under inquiry was. *Id.* In analyzing the statute, the Supreme Court noted that specifics about the "question under inquiry" before Congress were particularly germane, because witnesses could refuse to answer questions **not** pertinent to the "question under inquiry" without committing a crime. *Id.* at 755. The Court stated

5

> [T]he very core of criminality under 2 U.S.C. § 192 is pertinency to the subject under inquiry of the questions which the defendant refused to answer. What the subject actually was, therefore, is central to every prosecution under the statute. Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.

*Id.* at 764. In contrast, the gist of a conspiracy charge is the agreement to commit an unlawful act, *Braverman v. United States*, 317 U.S. 49, 53 (1942), and so "[t]o be legally sufficient, a conspiracy count in an indictment need only set forth 'the agreement and specific intent to commit an unlawful act, and when required by statute, an overt act." *United States v. Werme*, 939 F.2d 108, 112 (3d Cir. 1991 (citations omitted); *Johnstone*, 856 F.2d at 540-42 . The indictment in this case alleges exactly that.

The defendant raises a second argument in her Motion to Quash. She argues that the indictment alleges facts that support a violation of 21 U.S.C. § 856, and that, because that section is more specific than 21 U.S.C. § 841, Defendant Harrison cannot therefore be guilty of a conspiracy to violate section 841, because of the principle of statutory construction that the "specific controls the general." D.I. 57 at 4-5. She argues that this result is particularly compelled because the penalties under section 841 are more severe than those under section 856.

The Defendant is wrong. Many federal criminal statutes overlap and prosecutors may bring criminal charges under either. *Bobb v. Attorney General*, 458 F.3d 213, 221 (3d Cir. 2006). In such cases, each statute, in conjunction with its sentencing scheme, operates independently of the other. *Id.* Also, it makes no difference that the two statutes carry different punishments. *Id.*; *see United States v. Batchelder*, 442 U.S. 114, 122 (1979). When an act violates more than one criminal statute, "the Government may prosecute under either so long as it does not discriminate

against any class of defendants." Bobb, 458 F.3d at 221 (citation omitted).

The defendant is charged with violating title 21, section 846 and title 18, section 2. In order to procure a conviction, the government will have to prove beyond a reasonable doubt that a conspiracy between two or more persons to violate 21 U.S.C. § 841 existed during the time and in the place alleged, that Defendant Harrison knowingly and voluntarily joined that conspiracy, and that the conspiracy was responsible for the distribution of more than fifty grams of cocaine base. The government may also procure a conviction if it proves beyond a reasonable doubt that Defendant Harrison aided and abetted the conspiracy. Indeed, she could be acquitted of the conspiracy, but convicted of aiding and abetting the conspiracy, and still face the same consequences. *See United States v. Krogstad*, 576 F.2d 22, 29 (1978). A reasonable jury could find that a person who makes her home available to others engaged in a drug conspiracy shares a unity of purpose, an intent to achieve a common goal, and an agreement to work together to achieve that goal, and so is guilty of conspiracy. *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999) (stating elements of a conspiracy charge). A reasonable jury could also find, on the same facts, that such a person aided and abetted the conspiracy.

For the reasons stated, the government respectfully requests that the Court deny the Motion to Quash.

## II.     Motion to Sever (D.I. 62)

Defendant Harrison seeks severance and a separate trial under Rule 14 of the Federal Rules of Criminal Procedure. She asserts that the indictment alleges only that Harrison's home was used to sell crack, and that the substantive offenses involved in the indictment do not involve her. She further asserts that the discovery produced thus far only demonstrates that illegal drugs

7

were sold outside her home, and that this drug activity by her co-defendants would only serve to confuse the jury because Harrison was supposedly not involved in the actual distribution of drugs. In short, Defendant Harrison argues that the "evidentiary spillover" of the case against her co-defendants will so taint the case against Harrison that she cannot receive a fair trial.

"[Principles] of judicial economy often favor a joint trial when a conspiracy is charged." *United States v. McGlory*, 968 F.2d 309, 340 (3rd Cir.1992). "The introduction of evidence more damaging to one defendant than another does not entitle the seemingly less culpable defendant to a severance." *Id.* (citations omitted). "Further, the mere introduction of other crimes evidence against one defendant does not entitle a co-defendant to a separate trial." *Id.* (citations omitted). "The inquiry is whether the jury can reasonably be expected to compartmentalize the evidence against each defendant. *Id.* (citation omitted)."

A request to sever based on evidentiary spillover is " in tension with the fundamental principle that the federal system prefers joint trials of defendants who are indicted together because joint trials promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *United States v. Lore*, 430 F.3d 190, 204-05 (3rd Cir. 2005) (citations omitted). "For this reason the choice of whether to sever defendants' trials rests in the sound discretion of the district courts." *Id.* at 205. "A court should grant severance under Fed.R.Crim.P. 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (citations omitted). "Defendants seeking a severance bear a heavy burden and must demonstrate not only that the court would abuse its discretion if it denied severance, but also that the denial of severance would lead to clear and substantial prejudice resulting in a

8

manifestly unfair trial." *Id.* (citations omitted).

Defendant Harrison has made no showing to meet her "heavy burden" that the evidence in the case is so complex or overwhelming that the fact finder would be unable to separate evidence that pertained to her from evidence that pertained to other defendants. Indeed, the case is not unlike many other conspiracies where some defendants play certain roles in the conspiracy, but not others, and some defendants are charged with certain substantive counts, but others are not. *Id.* (stating there was nothing unusual in the joinder of charges and defendants in a conspiracy because "undoubtedly, there are many criminal cases in which defendants are tried together on different counts, so that all the evidence is not germane to all the counts against each defendant."); *see also United States v. Harris*, 908 F.2d 728, 736-37 (11th Cir. 1990) (holding that the district court did not abuse its discretion in denying severance even though the defendant was named in only 1 of 74 overt acts listed in a conspiracy count and the evidence against him during a month-long trial took no more than an hour to present).

For the reasons stated, the government respectfully requests that the Court deny the Motion to Sever.

## III.  Motion Under Rule 16(d), (D.I. 59) and Supplemental Motion Under Rule 16(d) (D.I. 77)

In these motions, Defendant Harrison requests that the Court enter an order compelling the government to produce certain items in discovery. These items are (a) agent notes pertaining to Defendant Harrison, (b) information concerning the events of February 21, 24 and March 1, 2006, in particular, a February 24, 2006 call, (c) information concerning a conversation between Brown and Harrison referenced on page 00000157 of the discovery, (d) the identity of

confidential sources referenced on pages 00000036 and PO-00000018 of the discovery, (e) *Jencks* material, including grand jury transcripts; (f) Brady material; and (g) the statements of cooperating defendants and notes of the interviews of cooperating defendants.

The government will address these requests seriatem. Also, the government believes the issues raised in categories A, B, and C are moot for the reasons stated below.

A.  Agent notes. The government has collected a set of agent notes pertaining to the case and will produce them within a week to all defendants.

B.  Information pertaining to the events of February 21, 24 and March 1, 2006, in particular, a February 24, 2006 call. The government produced the vast majority of the discovery, including CDs of the intercepted calls from two wiretaps, CDs of consensually monitored conversations, DVDs of videotaped events, and the various investigative reports and affidavits of the agents, on May 25, 2006. There were two smaller productions on June 29, 2006 and July 21, 2006. Except for agent notes discussed above, the government believes it has turned over all discoverable materials from the pre-indictment phase of the investigation, including information about the events on the dates sought by Defendant Harrison. The government is aware of its discovery obligations, and will produce any additional materials if they come to light. The February 24, 2006, call is #1491 over Target Telephone 1 and was produced on May 25, 2006.

C.  Information concerning a conversation between Brown and Harrison referenced on page 0000157 of the discovery. The call referenced on page 157 of the discovery is # 3938 over Target Telephone 1 and was produced on May 25, 2006.

D.  The identity of confidential sources referenced on pages 00000036 and PO-00000018 of the discovery. The defendant has not made an effort to meet her burden to overcome the

10

government's privilege to withhold the identity of informants. *See Roviaro v. United States*, 353 U.S. 53 (1957); *United States v. Beckett*, 889 F.Supp. 152 (D.Del. 1995). The government does not, at present, intend to call informants at trial. If it does ultimately determine to call informants, it will disclose their identities and produce discoverable information about them a week before trial. *Beckett*, 889 F.Supp. at 155.

E-G.  *Jencks* material, including grand jury transcripts, cooperator statements, and *Brady*.

It is well settled that defendants are not entitled to any *Jencks* material until after each government witness has completed his or her direct examination at trial. *See* Fed. R. Crim. Proc. 26.2(a) ("After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony."); *see also* Fed. R. Crim. Proc. 16(a)(G)(2) ("Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."); 18 U.S.C. § 3500 ("In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.").

Indeed, as the Third Circuit has made plain, the Court lacks authority to compel the government to produce *Jencks* statements any earlier:

[T]he Jencks Act flatly states that disclosure of prior statements by government

11

> witnesses may not be compelled "until said witness has testified on direct
> examination in the trial of the case." The blunt command of the statute together
> with the unequivocal legislative history has led to unbroken precedent in the
> Courts of Appeals denying to district courts the power to compel production of
> the statements of government witnesses until conclusion of the direct examination
> at the trial.

*United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978) (internal parenthetical and emphasis omitted)[3]; *see also generally Illinois v. Abbott & Associates, Inc.*, 460 U.S. 557, 567 n.11 (1983) (explaining importance of maintaining grand jury secrecy even after conclusion of grand jury investigation); *Palermo v. United States*, 360 U.S. 343, 349 (noting intent of Jencks Act to restrict use of witnesses' prior statements to impeachment).

The policy of the United States Attorney's Office for the District of Delaware is generally to provide grand jury *Jencks* material one week in advance of trial. With respect to non-grand jury *Jencks*, the policy is to determine the timing of production on a case-by-case basis. Recognizing that the trial may be lengthy and could involve a substantial number of witnesses, the government has produced, or will shortly produce, most of what might be considered *Jencks* material, such as reports, notes and affidavits. The government is withholding the grand jury transcript and the reports of the post-indictment statements of cooperating defendants[4], and will

---

[3] The Federal Rules of Criminal Procedure have been amended since the decision in *Murphy* to require the production of *Jencks* materials at certain hearings. *See* Fed. R. Crim P. 26.2(g). There is no requirement under the Rules or 3rd Circuit case law that requires the pre-trial disclosure of *Jencks* in response to general discovery requests. *See United States v. Cummings*, 400 F.Supp. 2d 822, 829-30 (W.D.Pa. 2005).

[4] With respect to the statements of cooperators, the government has two concerns about early production. First, it does not want the already documented statements to influence the statements of witnesses either not yet interviewed, or witnesses who will be re-interviewed. Second, the cooperating defendants are detained, and the government does not want the statements circulating months in advance of the trial out of security concerns.

produce them in accordance with office policy. None of these documents is particularly lengthy. The withheld reports presently total only thirteen pages. There is only one grand jury transcript of about seventy-three (double spaced) pages. In contrast, the government has produced over 580 pages of discovery thus far.

The government is not, to its knowledge, in possession of *Brady* material. It will produce any such material as soon as reasonably possible if any comes to light.

The government respectfully requests that the Court deny these motions for the reasons stated.

IV.   **Motion to Compel the Government to Give Notice of its Intention to Use Evidence of Other Crimes, Wrongs or Acts (D.I. 61)**

Defendant Harrison requests that the government provide her with any Rule 404(b) evidence no later than two months before trial.

Rule 404(b) requires the prosecutor provide notice in advance of trial of its intent to use other acts evidence. Fed. R. Evid. 404(b). The purpose of the notice requirement is to reduce surprise and promote early resolution of admissibility issues. *Id.*, advisory committee notes, 1991 Amendment. The Advisory Committee notes state: "Other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes a reasonable request or disclosure will depend largely on the circumstances of each case." Another district court in this Circuit approved of a three day notice provision, after reviewing cases that provided for seven, ten, or fourteen days notice. *See United States v. Blackwell*, 954 F.Supp. 944, 968 (D.N.J. 1997). The two month notice period proposed by Defendant Harrison is arbitrary and unnecessary. Many evidentiary decisions are made in the final weeks before a trial, as a case is put together

13

and narrowed for trial, and often evidence that was considered for trial is dropped as the final trial strategy takes shape. A two month notice period will potentially require the government, out of an abundance of caution, to seek to designate more 404(b) than it otherwise might. The government respectfully requests that if the Court is inclined to set a specific time to submit such evidence, it set the time as the date when motions in limine are due.[5]

## V.    Motion to Suppress Statements (D.I. 60)

Defendant Harrison seeks to suppress a statement made by her on May 4, 2006. See D.I. 60, ¶ 5. The government will not seek to introduce this statement. The government respectfully requests that this motion be denied as moot.

---

[5] The government is aware of one piece of potential Rule 404(b) evidence. Defendant Harrison was arrested on February 6, 2006 (during the time frame of the charged conspiracy but apparently outside its scope). Following her arrest, she was charged by Delaware with receiving a stolen firearm, tampering with physical evidence and evidence suppression, possession of a narcotic schedule II controlled substance, possession of drug paraphernalia, and endangering the welfare of a child by committing a title 16 offense with a child in the dwelling. The charges remain pending. The government has not reached a decision as to whether it will seek to use Rule 404(b) to introduce into evidence the acts that led to these charges. However, Defendant Harrison was, or certainly is now, aware of the matter, and will have ample time to marshal her arguments to bar its introduction should the government seek its introduction as Rule 404(b) evidence.

WHEREFORE, for the reasons stated, the government respectfully requests that the Court deny each of Defendant Harrison's pending motions.

                                                Respectfully submitted,

                                                COLM F. CONNOLLY
                                                United States Attorney

                                       By: */s/ Douglas E. McCann*
                                                Douglas E. McCann
                                                Assistant United States Attorney
                                                1007 Orange Street, Suite 700
                                                P.O. Box 2046
                                                Wilmington, Delaware 19801

DATED:      November 17, 2006

## CERTIFICATE OF SERVICE

I, Douglas E. McCann, hereby certify that I caused the foregoing

GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANT HARRISON'S PRETRIAL MOTIONS

to be served this 17th day of November, 2006, on the following counsel in the manner indicated.

BY CM/ECF

Johanna Markind, Esquire
1500 Walnut Street
Suite 1100
Philadelphia, Pennsylvania 19102

_____
Douglas E. McCann