IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 06-50-06 GMS |
| | : | |
| ASHLEY HARRISON, | : | |
| | : | |
| Defendant. | : | |

**RESPONSE OF THE UNITED STATES TO DEFENDANT HARRISON'S
SUPPLEMENTAL MOTION FOR SEVERANCE AND MOTION FOR SPEEDY TRIAL**

NOW COMES Colm F. Connolly, United States Attorney for the District of Delaware,

and Douglas E. McCann, Assistant United States Attorney for the District of Delaware, and

hereby responds to Defendant Ashley Harrison's Supplemental Motion for Severance and

Motion for Speedy Trial. D.I. 177. For the reasons that follow, the Court should deny the

Defendant's Motion.

**I.    PROCEDURAL HISTORY**

The Government sets forth below some of the procedural history of this case with

particular emphasis on events relevant to an analysis of excludable time under the Speedy Trial

Act of 1974, 18 U.S.C. § 3161 *et seq*.

The Grand Jury returned an Indictment in this case on May 2, 2006. D.I. 6. The

Indictment charges Willie Brown, Mark Tatman, Marty Eaton a/k/a "Dmx," Craig Durham, John

Doe a/k/a "Auk," Brittney Robinson and Ashley N. Harrison a/k/a "Nikki" with conspiring to

distribute more than fifty grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846.

It further alleges that Tatman, Eaton, Durham and Doe participated in the enterprise by

distributing crack cocaine on Brown's behalf. It further alleges that Harrison made her Dover

residence available to Brown for use as a location where some sales to Brown's customers were made, and that Robinson used her apartment to secrete drugs for Brown, and acted as a courier for Brown. The Indictment also alleges four substantive distributions of more than fifty grams of cocaine base by Brown, Tatman, Eaton, Durham and Doe.

Defendant Harrison had her initial appearance on May 5, 2006. The Government filed a Motion for Detention at the initial appearance. D.I. 12. The United States Magistrate Judge held a detention hearing and arraignment on May 10, 2006. At that proceeding, the Magistrate Judge ordered the defendant detained pre-trial, and gave the defendant until July 31, 2006, to file pre-trial motions. D.I. 17. The Magistrate Judge excluded the intervening time in the interests of justice. *Id.*

On July 31, 2006, Defendant Harrison filed motions to quash the indictment, to compel discovery, to compel notice of Rule 404(b) evidence, to suppress and to sever. D.I. 57, 59, 60, 61, 62. These filings further tolled the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F).

On August 4, 2006, Defendant Brown moved for an extension of time to file pre-trial motions. The Court granted the motion and set a new date of September 25, 2006, for pre-trial motions. On September 27, 2006, the Government filed a motion for a scheduling conference to set a briefing schedule on the pending motions, and to discuss a trial date. D.I. 78.[1] The Court set the hearing for October 5, 2006, without objection from Defendant Harrison. D.I. 79.

On September 28, 2006, Defendant Eaton was arrested in New York. Accordingly, the

---

[1]The Government did not seek a scheduling conference before September 25, 2006, because it was waiting to see if Defendant Brown filed any motions by the September 25 cut-off date. He did not file any motions, and so two days later the Government petitioned the Court to set a conference. Defendant Brown ultimately did file a pre-trial motion in January, 2007.

Government sought a continuance of the scheduling conference to, among other things, allow time for his transfer and to allow time for his counsel to be appointed and learn the case. D.I. 180. The Court re-set the scheduling conference for November 3, 2006, without objection from Defendant Harrison. D.I. 81.

Defendant Eaton had his first appearance in the District on October 17, 2006. On October 20, 2006, the United States Magistrate Judge conducted a detention hearing and arraignment. At the arraignment, the Magistrate Judge allowed Eaton's counsel until December 21, 2006, to file pre-trial motions. D.I. 91.

At the November 3, 2006, scheduling conference, the Court and the parties discussed the status of the case. At that hearing, it was not yet clear whether Defendant Eaton planned to file pre-trial motions and go to trial, or whether he would plead guilty.[2] Accordingly, the Court continued the scheduling conference until December 1, 2006, without objection from Defendant Harrison. D.I. 93. At the November 3 hearing the Court also set a briefing schedule for Defendant Harrison's pending motions. The Government filed an omnibus response to Defendant Harrison's pre-trial motions on November 17, 2006. D.I. 95. Defendant Harrison filed a reply on November 30, 2006. D.I. 101.

During the December 1, 2006, telephone conference, the Court set trial for April 9, 2007. In its scheduling order, the Court excluded the time from December 6, 2006, until April 9, 2007, in the interests of justice. The Court also set oral argument on Defendant Harrison's motions for January 9, 2007. D.I. 104. Defendant Harrison did not interpose any objection with respect to these timeframes.

---

[2]Defendant Eaton did ultimately file motions, but later changed his plea to guilty.

3

On January 9, 2007, the Court heard argument on Defendant Harrison's motions. At the hearing, the Court gave Defendant Harrison leave to supplement her motion to sever. On January 25, 2007, Defendant Harrison advised the Court that she would not supplement the motion to sever at that time. D.I. 116.

Following the January 9, 2007, oral argument, the parties filed various motions including a motion to suppress the wiretap (January 10, 2007, by Defendant Brown, D.I. 111), a motion in limine (February 13, 2007, by the Government, D.I. 121), a motion for discovery (February 26, 2007, by the Government, D.I. 123), and a motion in limine (March 1, 2007, by Defendant Harrison, D.I. 130).

On March 20, 2007, Defendant Brown moved to continue the trial from April 9, 2007 because of a scheduling conflict. D.I. 140.[3] On March 23, 2007, the Court heard from the parties on the motion to continue. As the docket reflects, Defendant Harrison did not oppose the motion. The Court re-set the trial for May 14, 2007. On March 26, 2007, the Court issued a new scheduling order excluding the time from March 26, 2007 until May 14, 2007. D.I. 143.

On April 23, 2007, the Court re-set the trial to June 18, 2007. The docket sheet does not reflect the basis of the continuance, and the Government does not have the transcript of the hearing. Counsel for the Government believes that the continuance was initiated because of scheduling problems being experienced by counsel for Defendant Brown and the Court. In addition, counsel for the Government believes that counsel for defendant Harrison did not object to the continuance, although she did indicate that she would object to a future continuance.

---

[3]Also, there were a number of other motions filed subsequent to March 20. *See* D.I. 150, 152, 156, 157, 159, 162. A number of these remain pending.

4

On May 8, 2007, Defendant Brown filed what was in essence a motion for new counsel. D.I. 167. The Court granted the application on May 23, 2007 and continued the June 18 trial date as to defendant Brown; the instant motion followed.

## II.    ARGUMENT

In her motion, Defendant Harrison argues, in summary fashion, that she should be severed from Defendant Brown and allowed to proceed to trial on June 18, 2007, because the Sixth Amendment and the Speedy Trial Act give her a right to a speedy trial, because she has been incarcerated over a year in pre-trial detention, because the trial has been continued twice, and because severance would cure a potential *Bruton* problem.

### A.    Severance is Disfavored

The gravamen of Defendant Harrison's argument is that severing her from Defendant Brown and trying her on June 18 is the "best and only practical way of safeguarding Harrison's right to a speedy trial." D.I. 177, ¶ 11. In analyzing this contention, it is important to keep in mind that joint trials play "a vital role in the criminal justice system." *Zafiro v. United States*, 506 U.S. 534, 536 (1993). Because of the preference for joint trials in conspiracy cases, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants . . . ." *Id.*

### B.    There is No Violation of the Speedy Trial Act, or the Sixth Amendment Right to a Speedy Trial

As discussed in more detail below, the only remedy for a violation of the Speedy Trial Act or the Speedy Trial Clause is dismissal of the Indictment. Defendant Harrison does not allege a violation of her speedy trial rights, nor does she seek the applicable remedy -- dismissal --

for such a violation. Rather, she seeks severance on the basis that a trial now is the only way to prevent a violation from occurring. Although severance is not a remedy provided for in the Speedy Trial Act or in the Speedy Trial Clause, the Government assumes for present purposes that the Court may, consistent with its supervisory powers, exercise its discretion and sever the defendants as a prophylactic measure to prevent a foreseeable future violation of a defendant's right to a speedy trial. The analysis on whether or not to exercise that discretion should balance, on the one hand, the preference in favor of a joint trial, with the possibility, on the other hand, that a further delay will violate a specific trial right of the Defendant's - namely, the right to a speedy trial. That analysis requires an assessment of the record to determine whether there is now a violation of the right to a speedy trial, and whether such a violation might occur before a joint trial could take place.

### 1.    There has been no violation of the Speedy Trial Act

The Speedy Trial Act requires that a defendant's trial must begin within seventy non-excludable days of the date the defendant is indicted, or first appears in the District, whichever occurs last. *See* 18 U.S.C. § 3161(c)(1). If the defendant is not brought to trial within the allowable time under the Speedy Trial Act, the charges against him "shall be dismissed." 18 U.S.C. § 3162(a)(1). Calculation of excludable and non-excludable time under the Speedy Trial Act is a matter of application of the statute to the relevant procedural dates in the case.

As set forth in the statute itself, the Defendant bears the burden of demonstrating that the Act has been violated, i.e., how seventy non-excludable days have passed since her Indictment. *See* 18 U.S.C. § 3162(a)(2). The Defendant does not – and cannot – make such a showing because every day since her Indictment has been tolled on the Speedy Trial Act clock, largely

6

through her own litigation.

Sections 3161(h)(1) through 3161(h)(9) of the Act list at least eighteen enumerated exclusions of time from the Speedy Trial calculus. Particularly relevant to the Defendant's motion are the statutory exclusions for pre-trial motions and for continuances. Section 3161(h)(1)(F) excludes for Speedy Trial Act purposes any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." Thus, all time from the filing of a pretrial motion through hearing on that motion and any post-trial briefing, without consideration for reasonableness, is excluded. If the court does not conduct a hearing, all time from the filing of the motion through completion of briefing on it, again with out consideration for reasonableness, is excluded. *See United States v. Felton*, 811 F.2d 190, 195 (3d Cir. 1987)(*en banc*) (interpreting *United States v. Henderson*, 476 U.S. 321(1986)). Similarly, Section 3161(h)(8)(A) excludes from Speedy Trial Act time calculations "[a]ny period of delay resulting from a continuance . . ., if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."

A review of the tolling solely attributable to Defendant Harrison's litigation of the case demonstrates the lack of prejudice suffered as a result of the alleged delay. Defendant Harrison's arraignment took place on May 10, 2006. At the arraignment, the Magistrate Judge excluded the time from May 10, 2006, until July 31, 2006, to allow counsel time to review the discovery and to prepare pre-trial motions. Defendant Harrison filed numerous pre-trial motions on July 31, 2006, again stopping the speedy trial clock. The Court held a hearing on those motions on January 9, 2007 (without Defendant Harrison interposing any objection about delay), and gave

7

Defendant Harrison leave to supplement the motion to sever until January 25, 2007. At that point (January 25, 2007), an additional thirty days (i.e. until about February 25, 2007) were excluded under section 10(e)(10) of the District of Delaware's "Time Limits and Procedures For Achieving Prompt Disposition of Criminal Cases," effective November 1, 1987 (hereinafter, the "District Plan"), as delay attributable to a period when a matter concerning the defendant is under advisement by the Court.[4]

On March 1, 2007 (a little more than thirty days later), Defendant Harrison filed a motion in limine. While that motion was still pending, Defendant Harrison consented to the continuance of the April 9, 2007 trial date to May 14, 2007. Defendant Harrison then consented to the further continuance of the trial to June 18, 2007. In sum, virtually every day from her first appearance until now is excludable solely by reference to Defendant Harrison's litigation.[5]

The above analysis does not even address the additional tolling attributable to sources other than Defendant Harrison. For example, the Government's detention motion against Defendant Harrison tolled the time from the initial appearance to the arraignment. Also, Defendant Eaton's October 17, 2006, initial appearance re-set the Speedy Trial clock for all co-defendants. *Henderson*, 476 U.S. at 323 n. 2 (1986) (finding that Speedy Trial Act clock begins on the date of last co-defendant's arraignment because "[a]ll defendants who are joined for trial

---

[4]The District Plan defines a matter as "under advisement" when the Court has received everything it expects to receive from the parties before reaching a decision. *See* District Plan § 10(e)(10). With respect to the original motion to sever, that time would begin at the point that Defendant Harrison indicated she had nothing more to add - that is, January 25, 2007.

[5]In making its argument, the Government does not fault the Defendant for defending the case. Rather, the Government merely observes that the Defendant's own actions tolling the Speedy Trial clock undermine a claim of prejudice with respect to pre-trial delay.

8

generally fall within the speedy trial computation of the latest codefendant"). As another example, the Court tolled the entire period from December 1, 2006 until the original April 9, 2007, trial date under the Speedy Trial Act's "interests of justice" exception.

In sum, in the case thus far, Defendant Harrison cannot show that even one of the seventy days on the Speedy Trial Act clock have been used – in large measure for reasons due to defendant Harrison's litigation, and not to codefendant litigation. Thus, even if no other tolling occurred after today, the Court could set trial for August 9, 2007 without violating defendant's rights that would also allow sufficient time for Defendant Brown's new attorney to prepare for trial.[6] As such, a need to comply with the Speedy Trial Act's terms is simply not a basis for severance at this time.

>    **2.    A Further Reasonable Delay Will Not Violate the Speedy Trial Act**

Defendant Brown already has a new lawyer appointed. As discussed above, there is no reason why, even allowing for a reasonable period for the review of discovery and the filing of pre-trial motions by Defendant Brown's attorney, that the case cannot be tried some time in the next few months.[7] Reasonable delays attributable to a co-defendant joined for trial are specifically provided for in the Speedy Trial Act. 18 U.S.C. § 3161(h)(7). In examining this provision, the Third Circuit cited part of the legislative history of the Speedy Trial Act:

> Defendants who are properly charged with the joint commission of an offense should ordinarily be tried together to save the time, expense and inconvenience of separate prosecutions. It has been reported that some trial judges have granted

---

[6]The Government does not suggest that August 9, 2007 is the only appropriate date. It merely makes the point that the trial could still take place more than two months from now without a violation, because no time has elapsed on the Speedy Trial clock.

[7]The case has been streamlined by the guilty pleas of four co-conspirators.

9

severances unnecessarily in multidefendant cases 'so that a defendant whose case is moving too slowly does not hold up the trial of his codefendants.' ...

*United States v. Novak*, 715 F.2d 810, 815 (3d Cir. 1983) (citation omitted) (*overruled in part on other grounds by United States v. Felton*, 811 F.2d 190 (3d Cir. 1987)). In *Novak* and *Felton*, the Third Circuit specifically noted that in debating proposed amendments in 1979 to the Speedy Trial Act, Congress had desired to continue the preference for joint trials and had reaffirmed its intent that the joinder exclusion under section 3161(h)(7) be expansively construed. *Felton*, 811 F.2d at 199. Thus, it is not unreasonable to exclude from the Speedy Trial Act a further period of time to allow Defendant Brown's new counsel to familiarize himself with the case in order to permit the preferred joint trial.

### 3.    The Sixth Amendment does not require severance

The Sixth Amendment guarantees defendants the right to a speedy trial. The only remedy for a violation of the Sixth Amendment guarantee is dismissal. *Strunk v. United States*, 412 U.S. 434, 440 (1973). As noted above, the defendant does not seek dismissal, but rather severance. In determining whether the Sixth Amendment right to a speedy trial has been violated, the Court should weigh the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 531-33 (1972); *Hakeem v. Beyer*, 990 F.2d 750, 759 (3d Cir. 1993).[8]

The length of delay involves two inquiries. First, the accused must demonstrate that the

---

[8]In order to show a violation of the Speedy Trial Act, the Court need only look to the docket to determine whether seventy days have elapsed or not. The burden on proving a constitutional claim is plainly higher, because the defendant cannot merely point mechanically to the passage of a statutorily set number of days, but must come forward with evidence that satisfy the *Barker* factors.

10

period between the indictment and the trial is "presumptively prejudicial" and not ordinary delay.
*Hakeem*, 990 F.2d at 759-60. If the accused makes this showing, the Court then proceeds to
weigh the length of delay along with the remaining factors described above. For purposes of this
brief, the Government will assume that the prospect of a delay beyond the present thirteen
months is "presumptively prejudicial." *See Hakeem*, 990 F.2d at 760 (14 month delay sufficient
to trigger inquiry).

     In examining the four factors, it is plain that Defendant Harrison cannot make out a
constitutional Speedy Trial Clause violation. First, the length of the delay can relate to at least
three types of harm: oppressive pre-trial incarceration; the accused's anxiety and concern over
the outcome of the litigation; or the impairment of the defense. *Id.* Defendant Harrison has
offered nothing in her moving papers that would lend any support to a finding of these types of
harm. In *Hakeem*, the Third Circuit found that pre-trial detention of thirteen or fourteen and a
half months was not *per se* oppressive. *Id.* at 761. There was no showing in that case, or this
one, that the defendant is subject to substandard conditions in prison. *Id.* (holding that "we do
not believe it follows, however, that pretrial detention, coupled with a fourteen and one-half
month delay, permits an automatic inference of enough prejudice to balance that factor in a
petitioner's favor without proof of sub-standard conditions or other oppressive factors beyond
those that necessarily attend imprisonment.").

     The reason for the delay here is due to a number of matters (a substantial portion of which
was caused by the Defendant herself), none of which weigh in the defendant's favor. First, the
defendant was charged along with six others in a relatively complex drug conspiracy. As a
result, the defendants each sought, and were granted, a lengthy period of time to prepare and file

pre-trial motions. Defendant Harrison chose to defend the case (as is her right) and filed a number of motions, each of which was subject to full briefing and oral argument. In addition, through no fault of the Government, Defendant Eaton joined the case late, further engendering delay. Finally, Defendant Brown sought two continuances of the trial (from April to May, and then from May to June); Defendant Harrison objected to neither. None of this delay can be attributed to Government action.

In terms of the assertion of the right, the Court cannot find at this stage that this factor weighs in Defendant Harrison's favor. The instant motion is the first assertion of the defendant's right to a speedy trial, and it is made in summary fashion without any evidence, argument, or authority that would aid the Court in a substantial way in assessing the proper course to take. Previous to this motion, she did not object to any of the continuances granted in the case, or schedules set in the case.

Finally, the only prejudice the defendant articulates is that the length of the delay is unreasonable. As discussed above, she has not made any showing that her detention is itself oppressive. She also does not assert that defenses or trial strategies have been foreclosed by the delay, or that further delay will cause such harm. Thus, Defendant Harrison has not established that the Speedy Trial Clause concerns outweigh the preference in the law that co-conspirators be tried together.

**B.**     **The Defendant Has Not Identified A *Bruton* Problem That Would Counsel Severance**

In a pending motion, Defendant Harrison argues that post-arrest statements by Defendant Brown to the effect that Defendant Harrison did nothing should be admitted at the trial in this

matter. D.I. 157. As a further grounds for severance, she argues here that severance will eliminate the potential *Bruton* problem presented by the admission of that evidence.

In *Bruton*, the Supreme Court held that the Confrontation Clause is violated when the confession of a nontestifying codefendant *implicating* the defendant as a participant in a crime is admitted in a joint trial. 391 U.S. 123, 135 (1968). In other words, if Brown's statement (as nontestifying codefendant) was a confession implicating Harrison (the defendant), the Government's effort to admit that confession would create a *Bruton* problem because Harrison would be unable to confront a witness (Brown) against her. According to Defendant Harrison, however, Brown's statement does not inculpate her, it exculpates her; thus no confrontation issue exists in relation to Harrison. As to Defendant Brown, the statement is his own, so an attempt by the Government to admit it against him would create no *Bruton* problem because, again, there is no issue raised concerning the defendant's right to confront a witness against him. As stated in previous papers, the Government will not seek to admit the statements in the trial, and it has filed a motion in *limine* seeking to prevent Defendant Harrison from admitting them because they are hearsay. D.I. 173.

**C.    Should the Court Determine to Sever the Case, the Government Respectfully Requests an Additional Opportunity to be Heard**

The Government believes that there is no basis to sever the trial on the present record. However, should the Court determine that a severance is necessary, the Government requests an additional opportunity to be heard.

If this case were severed under other circumstances, the Government would ask the Court to try Defendant Brown first. Defendant Brown was the ringleader of the charged conspiracy,

13

and Defendant Harrison's role was much less significant in comparison to his. The Government's theory concerning Defendant Harrison is that she allowed her residence to be used by Brown for his drug activities, thereby joining the conspiracy, or alternatively, aiding and abetting the conspiracy. In order to prove its case against Defendant Harrison, the Government would have to prove the existence of the Brown conspiracy during the charged period, and its responsibility for distributing more than fifty grams of cocaine base. The Government would then have to show Defendant Harrison's knowledge of, and membership in, the conspiracy, or it would have to show that she aided and abetted the conspiracy. Therefore, if Defendant Brown is tried second, he will have the benefit of a detailed roadmap of the Government's evidence that defendants in criminal cases are not entitled to receive.

Thus, a severance presents the Government with a difficult choice. The Government could proceed to trial against Harrison on June 18 and reveal its trial theory in its entirety to Defendant Brown. To avoid this, the Government only has two choices – it can move to dismiss the case against Defendant Harrison or it can seek the Court's permission to cure the only prejudice[9] articulated by Defendant Harrison by requesting a modification of her detention status. The Government respectfully requests that the Court allow it to be heard on these matters should the Court decide to sever the defendants.

---

[9]Although, as the Government argues above, the present record does not demonstrate any legally cognizable prejudice stemming from Defendant Harrison's pre-trial detention.

14

WHEREFORE, for the reasons stated above, the motion should be denied.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By: _____
Douglas E. McCann
Assistant United States Attorney
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, Delaware 19801

DATED:     May 31, 2007

15

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-50-GMS |
| | ) | |
| ASHLEY HARRISON | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I, Marie Steel, Legal Assistant in the Office of the United States Attorney for the District of Delaware, hereby certify that on the 31st day of May, 2007, I caused to be filed a Response of the United States To Defendant Harrison's Supplemental Motion For Severance and Motion For Speedy Trial with the Clerk of Court. I further certify that a copy of the foregoing was mailed via Federal Express to counsel of record as follows:

Johanna Markind, Esquire
1500 Walnut Street Suite 1100
Philadelphia, PA 19102
215-735-9004 (fax)

Jan A.T. van Amerongen, Esquire
Jan A.T. van Amerongen, LLC
1225 King Street, Suite 301
Wilmington, DE 19801

Marie Steel
Legal Assistant